# In the United States Court of Federal Claims

No. 12-303C

(Filed: October 21, 2014)

**********************************

**HITKANSUT LLC, a Michigan corporation, & ACCELEDYNE TECHNOLOGIES, LTD., LLC, a Michigan corporation,**

**Plaintiffs,**

**v.**

**UNITED STATES,**

**Defendant.**

**********************************

Patent case; motions to compel the production of documents from a CRADA partner of the government and from one of the government's national laboratories; RCFC 26(b)(1)-(2), (g)(1); application of "proportionality" considerations to plaintiff's discovery requests; "classified" documents

John S. Artz, Dickinson Wright, PLLC, Troy, Michigan, for plaintiffs. With him on the briefs were John A. Artz, Bryan J. Schomer, and Franklin M. Smith, Dickinson Wright, PLLC, Troy, Michigan.

Gary L. Hausken, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, and John Fargo, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

Barbara L. Mandell, Rader, Fishman & Grauer PLLC, Bloomfield Hills, Michigan, for Eaton Corporation. With her on the briefs were Robert J. Kimmer and Michael B. Stewart, Rader, Fishman & Grauer PLLC, Washington, D.C. and Bloomfield Hills, Michigan, respectively.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court are four motions reflecting disputes over pre-trial discovery in this patent case. The parties have been pursuing discovery to prepare for a potential future trial over whether the government, acting through Oak Ridge National Laboratory ("Oak Ridge" or "the government"), has infringed United States Patent No. 7,175,722 ("the '722 patent"), entitled "Methods and Apparatus for Stress Relief Using Multiple Energy Sources." In the first motion,

plaintiffs Hitkansut LLC and Acceledyne Technologies, Ltd., LLC (collectively, "Hitkansut") request that the court compel the production of certain documents and information currently being withheld by Eaton Corporation ("Eaton"), which previously had entered into Cooperative Research and Development Agreements ("CRADAs") with Oak Ridge. Pls.' Mot. to Compel Docs. from Third-Party Eaton Corporation ("Pls.' Eaton Mot."), ECF No. 65; *see also Hitkansut LLC v. United States*, 111 Fed. Cl. 228 (2013) ("*Hitkansut I*") (addressing provisions of the Federal Technology Transfer Act, 15 U.S.C. § 3710a(c)(7), establishing a privilege against and protection from disclosure for qualifying trade secrets or commercial or financial information).[1] Hitkansut's second motion asks the court to compel the government to produce the results, data, and reports associated with the operation of the allegedly infringing process by Oak Ridge. Pls.' Mot. to Compel Production of Docs. from the Def. ("Pls.' Data Mot."), ECF No. 77. Hitkansut's third motion seeks to compel the discovery of "classified" information pertaining to specific projects conducted at Oak Ridge. Pls.' Mot. to Compel Discovery Relating to "Classified" Information ("Pls.' Classified Mot."), ECF No. 76. Finally, in its fourth motion, Hitkansut requests that the court extend the deadline for completion of fact discovery. Pls.' Mot. to Extend the Close of Fact Disc. ("Pls.' Enlargement Mot."), ECF No. 79. All four motions are fully briefed and accordingly are ready for disposition.[2]

## BACKGROUND

The invention protected by the '722 patent is "a method of achieving a desired physical property in a structure . . . through the concurrent application of two different energies . . .

---

[1]A CRADA is defined by statute as

> [A]ny agreement between one or more [f]ederal laboratories and one or more non-[f]ederal parties under which the [g]overnment, through its laboratories, provides personnel, services, facilities, equipment, intellectual property, or other resources with or without reimbursement (but not funds to non-[f]ederal parties) and the non-[f]ederal parties provide funds, personnel, services, facilities, equipment, intellectual property, or other resources toward the conduct of specified research or development efforts which are consistent with the missions of the laboratory; except that such term does not include a procurement contract or cooperative agreement as those terms are used in sections 6303, 6304, and 6305 of Title 31.

15 U.S.C. § 3710a(d)(1).

[2]The court previously has construed disputed claim terms of the '722 patent, *see Hitkansut LLC v. United States*, 114 Fed. Cl. 410 (2013) ("*Hitkansut II*"), and ruled that some claims were invalid on patentability grounds per 35 U.S.C. § 101, *see Hitkansut LLC v. United States*, 115 Fed. Cl. 719 (2014) ("*Hitkansut III*"). In entering the latter order, the court noted that the government had a nascent defense that the remaining claims in the '722 patent were invalid under 35 U.S.C. § 112, relating to indefiniteness. 115 Fed. Cl. at 734 n.17. Subsequently, on August 11, 2014, the government filed a Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,175,722 pursuant to 28 U.S.C. § 112, ECF No. 80. Briefing on that motion has just been completed, and a hearing on the motion will be scheduled shortly.

[where t]he first energy may be thermal energy (*i.e.* heat) and the second energy may be mechanical vibration, sonic, laser, microwave, or magnetic energy." Pls.' Mot. to Compel & for Entry of a Protective Order at 1-2, ECF No. 11.[3] Hitkansut claims that the research conducted by Oak Ridge and by private entities through their contractual CRADAs with the government employs a thermomagnetic processing method that infringes the '722 patent. *Id.* at 2-3. The government disputes these claims.

After the suit progressed into the discovery phase, on January 28, 2013, Hitkansut moved pursuant to Rule 37(a) of the Rules of the Court of Federal Claims ("RCFC") to compel the production by the government of information related to the CRADAs which were entered by the government with private partners. Pls.' Mot. to Compel & for Entry of Protective Order. Hitkansut additionally requested that the protective order allow Hitkansut's principal access to protected information. *Id*. at 3. The court granted the motion in part and denied it in part. Specifically, the court allowed the government to withhold information privileged under the Federal Technology Transfer Act, 15 U.S.C. § 3710a(c)(7), including technical information and commercial projections, but required the government to supply Hitkansut with a privilege log identifying the withheld documents. *Hitkansut I*, 111 Fed. Cl. at 237, 239. In addition, the court required the government to provide Hitkansut with the non-privileged contents of its CRADA agreements, but denied Hitkansut's principal access to the material produced pursuant to the protective order. *Id*. at 239-40. In upholding the government's privilege claim, the court noted that "[t]he government submits that the privilege provided by [15 U.S.C. §] 3710a(c)(7)(A) only pertains to governmental disclosure of private-party information and does not necessarily shelter from disclosure information in the hands of third parties." *Id*. at 235 n.7.

Hitkansut subsequently sought from Eaton discovery of information relating to its CRADAs with Oak Ridge by way of a subpoena *duces tecum* and a subpoena for a deposition of Eaton, served April 17, 2014. *See* Pls.' Eaton Mot.[4] On June 19, 2014, after Eaton objected to

[3]In its complaint, Hitkansut limits its claims against the government to those specifically involving a thermo-magnetic process that uses magnets in combination with heat. Compl. ¶ 34. Among other things, staff at Oak Ridge conducted extensive research in that area and filed a patent application in April 2005 entitled "Thermal and High Magnetic Field Treatment of Materials and Associated Apparatus." Compl. ¶ 23 (referring to U.S. Pat. App. 2006/0231549). On January 9, 2007, U.S. Patent No. 7,161,124 was issued based upon this application.

[4]The subpoena specifically requested the following information:

1. All documents withheld by the Government at the request of Eaton in the underlying litigation, which are identified in the attached privilege log.
2. Funding, whether in-kind contributions or monetary contributions, from Eaton to [Oak Ridge] or from [Oak Ridge] to Eaton relative or pertaining to Eaton's use of the thermo-magnetic process.
3. Eaton's internal investment and/or use relative or pertaining to Eaton's use of the thermo-magnetic process.
4. Eaton's first knowledge and use of the thermo-magnetic process.

Hitkansut's requests and refrained from producing the requested documents, Hitkansut filed a motion under RCFC 37(a) requesting that the court order production. *Id.* In its motion, Hitkansut describes the requested documents as those relating to CRADAs that "outline the research that is to be and was conducted, the deliverables associated with the research, . . . the source and amount of funding provided to the government agency, and the results and conclusions generated by the research." *Id.* at 2. Hitkansut maintains that the requested information relates to the validity and infringement of the '722 patent and to damages. *Id.* at 7-8. Eaton opposes Hitkansut's request, arguing that Hitkansut is not entitled to the requested information because it is confidential and concerns activities that Eaton conducted independently of the government. Eaton Company's Brief in Opp'n to Pls.' Mot. to Compel Docs. ("Eaton's Opp'n") at 1, ECF No. 66. The government supports Eaton's position, emphasizing that Eaton is not a party to this litigation between Hitkansut and the government and is entitled to significant protection from discovery. *See* Views of the United States in Support of Non-Party Eaton Company's Opp'n to Pls.' Mot. to Compel Production ("United States's Views") at 1-2, ECF No. 67. The government additionally avers that it has already provided to Hitkansut much of the information that it requests from Eaton. *Id.* at 2.

On July 30, 2014, one day before discovery was set to close on July 31, 2014, Hitkansut filed three additional discovery motions pursuant to RCFC 37(a). The first motion requests that the court compel the production from the government of all records and electronic data "concerning the design, development, creation, operation, and/or steps" and all "documents and things" involving the processing of materials and testing of the allegedly infringing process. Pls.' Data Mot. at 2. The government opposes, arguing that Hitkansut's motion is untimely and that the requested items are irrelevant to plaintiffs' infringement action. Resp. of the United States to Pls.' Mot. to Compel Production of Docs. from the Def. ("Def.'s Data Opp'n") at 1-2, ECF No. 84. Hitkansut's second motion requests the court to compel the government to divulge

---

5. Any other source of funding, grant, revenue[,] or other compensation exchanged between [Oak Ridge] and Eaton, or any other third party and Eaton, relative or pertaining to Eaton's use of the thermo-magnetic process.
6. The contract or contracts defining the relationship between Eaton and [Oak Ridge], and any other documents which describe or define the relationship between Eaton and [Oak Ridge], including Cooperative Research and Development Agreements (CRADA[]s) and any other work for others agreement [*sic*] relative or pertaining to Eaton's use of the thermo-magnetic process.
7. Any Eaton internal report or evaluation, including commercial evaluations and/or commercial potential and/or use, relative or pertaining to Eaton's use of the thermo-magnetic process.
8. Acquisitions of any equipment or supplies, such as superconducting magnets, high magnetic field generating magnets and devices, and the like relative or pertaining to Eaton's use of the thermo-magnetic process.
9. Documents or summaries sufficient to show or reflecting Eaton's knowledge and evaluation of U.S. Patent No. 7,175,722.

Pls.' Eaton Mot. Ex. A, at 4-5.

to Hitkansut information regarding supposedly "classified" projects on a list prepared by Dr. Gerard Ludtka, an Oak Ridge group leader and Principal Investigator. Pls.' Classified Mot. Hitkansut expresses doubt that the information sought is truly classified and asserts that even if the projects are properly classified, the government may nonetheless disclose relevant, non-classified information regarding whether the allegedly infringing process was used in treating materials in connection with those projects. *Id.* at 1, 9. The government insists that some of the projects do not involve thermo-magnetic energy sources and are therefore irrelevant and that the remaining projects are properly classified and should accordingly be protected from disclosure. Response of the United States to Pls.' Mot. to Compel Discovery Relating to Classified Info. ("Def.'s Classified Opp'n") at 1-2, 8-10, ECF No. 81. Finally, in its third motion, Hitkansut requests an extension of time within which to complete discovery. Pls.' Enlargement Mot. The government urges the court to deny the extension on the grounds that Hitkansut refused to negotiate the length of time of the enlargement and failed diligently to pursue discovery during the original discovery period. Response of the United States to Pls.' Mot. to Extend the Close of Fact Discovery ("Def.'s Enlargement Opp'n") at 1-2, ECF No. 85.

**ANALYSIS**

Under Rule 37(a)(1), a party may, "[o]n notice to other parties and all affected persons, . . . move for an order compelling disclosure or discovery." RCFC 37(a)(1). In acting on a motion to compel discovery responses, the court exercises discretion, *see, e.g.*, *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc); *Osage Tribe of Indians of Okla. v. United States*, 84 Fed. Cl. 495, 497 (2008), guided by the provisions of Rule 26(b)(2) and Rule 26(g)(1). Those rules set out "proportionality" considerations that bear on disputed discovery requests, calling for a balancing of burdens, the needs of the case, and the importance of the proposed discovery in resolving the issues in the case. 7 James Wm. Moore *et al.*, *Moore's Federal Practice* § 37.22[2][a] (3d ed. 2012). Rule 26(b) authorizes "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," RCFC 26(b)(1), but discovery can be limited where

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

RCFC 26(b)(2)(C). Rule 26(g)(1) indicates that a discovery request should

> (ii) not [be] interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither [be] unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

RCFC 26(g)(1)(B).[5]

*A. Discovery from Nonparty Eaton*

Hitkansut contends that the documents it requests from Eaton regarding its CRADAs with the government are "highly relevant" to several issues in its infringement case, including "a determination of the amount of compensation owed for any infringement, the commercial success of the patented process, and the validity of [the '722 patent]." Pls.' Eaton Mot. at 2-3. First, Hitkansut claims that information regarding Eaton's internal analysis of the commercial value of the allegedly infringing process, and the amount of time, effort, and money, expended by Eaton relative to the process, "directly reflects the value and worth of the patented process." *Id.* at 7. Hitkansut additionally asserts, without elaboration, that the requested documents relating to commercial success and awards received by those conducting the research are relevant to nonobviousness and therefore the validity of the '722 patent. *Id.* at 7-8. Finally, Hitkansut argues that because Eaton worked closely with Oak Ridge, Eaton "would have highly relevant facts, documents[,] and information" relating to the '722 patent. *Id.* at 8.

In *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed. Cir. 1987), the Federal Circuit addressed the similar circumstance of a patentee seeking discovery of data from a nonparty allegedly participating in infringement. In affirming the district court's denial of the discovery sought, the court held that the district court did not abuse its discretion because the patentee failed to carry its burden of showing some relationship between infringement of the invention claimed in its patent and the confidential sales figures of the nonparty. *Id.* at 741-44.

Similarly, in *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990), a patent owner issued a subpoena seeking to obtain documents from a nonparty that were supposedly relevant to the issue of damages in its underlying patent infringement lawsuit. 894 F.2d at 1319. The district court ordered the disclosure of all of the information requested from the nonparty except the names of the nonparty's customers. *Id*. at 1320. The Federal Circuit overturned the district court's decision, concluding that the motion to quash the subpoena should have been granted in its entirety. *Id.* at 1320. The court of appeals commented that "[a] party to litigation has no absolute right to pursue any and every alternative theory of damages, no matter how complicated or tenuous." *Id*. at 1324. It reasoned that for the requested documents to be relevant, the patent owner must present its damage theories and establish that "*each theory* [is] actually [a] subject matter involved in the pending action." *Id.* at 1326-7 (emphasis in original) (internal quotation marks omitted). The court observed that because the patent owner did not sue

[5]RCFC 26(b) and (g) mirror Fed. R. Civ. P. 26(b) and (g). *See System Fuels, Inc. v. United States*, 73 Fed. Cl. 206, 215 (2006); *see also* RCFC 26, Rules Committee Notes, 2002, 2007, 2008, 2011, and 2012 revisions. The court accordingly will look to precedents applying Fed. R. Civ. P. 26 as well as those concerning RCFC 26.

the nonparty alleging infringement, the nonparty's infringement was not properly a subject matter involved in the underlying lawsuit. *Id.* at 1327-28.[6]

In this instance, Hitkansut has neither offered a specific damages theory to which the requested documents would be relevant nor charged Eaton itself with infringement.[7] Given that Eaton has not developed any commercial application of the development work it undertook with Oak Ridge, Eaton's Opp'n at 14, even Eaton's expenditures would have little if any relevance to Hitkansut's case against the government.[8] Hitkansut similarly has offered no specific support for its assertion that Eaton's documentation would help it rebut a claim of patent invalidity due to obviousness.

In effect, much of the information Hitkansut seeks from Eaton would be of potential use in building an infringement case against Eaton and other third parties. Notably, in its subpoena,

---

[6]Hitkansut insists that *American Standard* and *Micro Motion* are not applicable to the factual circumstances of this case and instead relies on the decision in *Truswal Sys. Corp. v. Hydro-Air Engineering, Inc*., 813 F.2d 1207 (Fed. Cir. 1987). *See* Reply Brief in Support of Pls.' Mot. to Compel Docs. from Nonparty Eaton Co. ("Pls.' Eaton Reply") at 3, ECF No. 72. Hitkansut asserts that in *Truswal*, the Federal Circuit allowed discovery of sales documents from a nonparty competitor. *Id*. That summation overstates the holding of the decision. The Court of Appeals instead remanded the case, requiring that the district court articulate the reasons indicating that disclosure would be unreasonable. *Truswal*, 813 F.2d at 1213 ("If the district court on reconsideration remains of the view that an order to quash is appropriate, it must provide an articulation of reasons why disclosure of the sales information sought under a suitable protective order would be unreasonable and oppressive."). The court declined to develop and impose a protective order that might be suitable and protective of the competitor's sales information. *Id.*

[7]Hitkansut states, "Traditional forms of patent damages include lost profits, price erosion, and reasonable royalties," but observes that because the government is not making or selling a product but rather conducting research for itself and with nonparties, "a reasonable royalty would be based on other matters, such as predictions, expectations, and valuations by others, as well as the money utilized by [Oak Ridge] on the research." Pls.' Eaton Reply at 8. Rather than offering a specific theory of calculating damages, Hitkansut implies that it plans to rely at least in part on Eaton's valuation of the allegedly infringing process. *Id.* However, Eaton's independent valuation has little bearing on damages in Hitkansut's lawsuit against the government.

[8]Hitkansut acknowledges that Eaton has stopped all of its thermo-magnetic research and development activities in the metal processing area both respecting its own use and those relating to CRADAs with Oak Ridge. Pls.' Resp. to the Def.'s "Views" Relative to Pls.' Mot. to Compel Production of Docs. from Eaton Company ("Pls.' Eaton Resp.") at 6, ECF No. 74. Hitkansut further declares that "[s]ince Eaton has indicated that it is no longer working on this matter, either with [Oak Ridge] or on its own, the documents and information relate to 'old' or 'dead' issues at Eaton." Pls.' Eaton Reply at 12. Finally, Hitkansut emphasizes that Eaton and Hitkansut are not competitors and Eaton's main business interests are as a supplier of automotive components rather than processing materials. Pls.' Eaton Resp. at 5; *see also* Pls.' Eaton Reply at 2-3.

Hitkansut requested "any . . . source of funding, grant, revenue[,] or other compensation exchanged between [Oak Ridge] and Eaton, *or any other third party and Eaton*, relative . . . to Eaton's use of the thermo-magnetic process." Pls.' Eaton Mot. Ex. A, at 4 (emphasis added). Hitkansut also demanded information about Eaton's acquisitions of equipment and supplies relating to its use of the thermo-magnetic process as well as documents "sufficient to show or reflecting Eaton's knowledge and evaluation of [the '722 patent]." *Id.* at 5. The court's subpoena power may not be used to help the plaintiffs bring an infringement action against nonparties. As the court in *Micro Motion* observed, "the discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery,* not to find out if it has any basis for a claim." 894 F.2d at 1327 (emphasis in original). Correlatively to *Micro Motion*, Eaton's potential infringement is not a subject matter of Hitkansut's infringement case against the government. *Id.* ("[Micro Motion] has studiously refrained from charging [the nonparty] with infringement. We conclude that [the nonparty's] infringement is not, on this record, shown to be subject matter involved in the [underlying infringement] suit."). In sum, Hitkansut is not entitled to discovery regarding Eaton's research and development activities in an effort to determine whether other parties have been infringing its patent.

Even if the information sought were relevant, discovery is not permitted where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case . . . and the importance of the discovery in resolving the issues." RCFC 26(b)(2)(C)(iii). The court in its determination of whether to allow discovery must balance need against burden, confidentiality, and harm. *See Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002).

Hitkansut attempts to establish its need for the information from Eaton by stating that denying Hitkansut access would "severely prejudice[]" its ability to evaluate the economic value and details of the government's alleged infringement. Pls.' Eaton Mot. at 3. However, Hitkansut fails to elaborate upon this blanket assertion or explain its need for information beyond the 200,000 images that the government has already provided. United States's Views at 14.[9]

In contrast, Eaton has shown evidence of potential harm from disclosure. Earlier in this litigation when Hitkansut moved to compel the government to disclose information from its CRADA partners, Mr. John A. Kovacich, an Eaton employee, provided a declaration outlining Eaton's concerns. Resp. of the United States to Pls.' Motion to Compel and for Entry of a Protective Order at Appx. A35-38, ECF No. 12. Mr. Kovacich explained that the information requested by Hitkansut at that point included Eaton-held trade secrets, technical know-how, and business and commercial projections that would be valuable to potential future competitors. *Id.* at Appx. A36-37. The court in *Hitkansut I* stated that it accepted that technical information and commercial projections "are commercial or financial information, and . . . this information is confidential because it would not customarily be released publicly by a private CRADA partner." 111 Fed. Cl. at 237.

---

[9]While Hitkansut asserts that the specific documents requested from Eaton are not available from another source, Pls.' Eaton Reply at 10-11, it does not explain why information beyond that produced by the government relating to the value and validity of the allegedly infringing process is needed. There has been no showing that the government is responsible for any infringing use Eaton may allegedly have made of the patented process.

It is also significant in assessing the burden on Eaton that Eaton is a nonparty. *See Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (noting that a party's status is significant in "determining whether compliance [with a discovery demand] would constitute an undue burden.") (quoting *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1271 (7th Cir. 1982)). Hitkansut counters that "[t]he CRADA documents and information being sought from Eaton are no different from confidential technical and financial information that is routinely disclosed in patent infringement lawsuits under the protection afforded by protective orders." Pls.' Eaton Mot. at 6. However, Hitkansut fails to account for the fact that the financial and technical information is only "routinely disclosed" by a party, not a nonparty, in an infringement lawsuit. As the court in *Micro Motion* observed, an entitlement to discover information concerning each competitor's business would allow a patentee "in virtually every infringement suit, immediately [to] obtain discovery from all possible competitors by merely filing a complaint asking for damages against one [competitor]." 894 F.2d at 1324-25. Requiring Eaton to disclose its confidential technical and financial information under these circumstances would constitute an undue burden.

In sum, Hitkansut has failed to establish that the information sought is relevant to its infringement suit against the government or that, even if deemed relevant, its need outweighs the burden disclosure would place on Eaton. Hitkansut's motion to compel discovery responses from Eaton consequently shall be denied.

*B. Sanctions*

Under Rule 37(a)(5), if a discovery motion is denied, the court must require the moving party to pay the reasonable expenses of the opposing party, including attorneys' fees. RCFC 37(a)(5).[10] However, an exception obviates this requirement for payment of expenses if the motion was "substantially justified" or "other circumstances make an award of expenses unjust." *Id.*

Hitkansut requests that Eaton be sanctioned for the time and costs of preparing its motion to compel on the grounds that that the positions taken by Eaton are frivolous, meritless, and in bad faith. Pls.' Eaton Mot. at 2, 8. Eaton counters that Hitkansut failed to establish a good faith basis for an entitlement to sanctions against Eaton and asserts instead that Eaton should be awarded expenses in defending against Hitkansut's motion because (1) Hitkansut failed to confer

---

[10]The rule states:

> If the motion [for an order compelling disclosure or discovery] is denied, the court may issue any protective order authorized under RCFC 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorneys' fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

RCFC 37(a)(5)(B).

meaningfully with Eaton before filing the motion; (2) Hitkansut failed to cite to the court controlling Federal Circuit authority regarding nonparty subpoenas; and (3) overall Hitkansut displayed bad faith in pursuing its subpoena against Eaton. Eaton's Opp'n at 19.

The discovery motions at issue and Hitkansut's actions fall within the exceptions to Rule 37(a)(5). The court's decision in *Hitkansut I* expressly reserved the issue of whether Hitkansut was entitled to third-party discovery from Oak Ridge's CRADA partners, *see* 111 Fed. Cl. at 235 n.7, essentially inviting Hitkansut to seek discovery from the partners. Hitkansut's actions were therefore substantially justified, and the court declines to impose sanctions against either entity.

*C. Discovery of Process Data from Oak Ridge*

In its second motion, Hitkansut seeks discovery from the government of the results, electronic data, and reports pertaining to Oak Ridge's use of the allegedly infringing process. Pls.' Data Mot. at 1. Hitkansut argues that those results and data are relevant to its infringement action because the information will provide proofs regarding terms of its patent claim, as follows: (1) whether and to what degree physical properties of the tested structures and materials were changed; (2) whether the applications of the thermal and magnetic energies were "first order rate relationships;" (3) whether the total energy was above the activation energy of the materials used; (4) how operational settings were selected and used; and (5) whether the "first order rate relationships" of the energy processes were first-order Larson-Miller relationships. *Id*. at 6-7.[11] Hitkansut represents that production would not be burdensome because the majority of the data requested was collected on LabView, a commercially available software program, and can be produced in electronic form. *Id.* at 9.

The government bases its refusal to disclose the requested information on the grounds that (1) the data that Hitkansut requests are not relevant to any of Hitkansut's claims and are also not reasonably calculated to lead to admissible evidence, and (2) Hitkansut's motion to compel is untimely because it was filed on the eve of the discovery deadline. Def.'s Data Opp'n at 2-3, 6.

Data relating to the government's experimentation using thermo-magnetic processes are both relevant and typically admissible. *See, e.g., In re Gabapentin Patent Litig.*, 393 F. Supp. 2d 278, 287 (D.N.J. 2005) ("The manufacturing process and testing conducted on samples made from that process are clearly relevant to the infringement inquiry."). The requested data relate to the government's use of thermo-magnetic processes that arguably fall within the scope of the '722 patent. Nonetheless, Oak Ridge already has admitted its use of thermo-magnetic processes, and disclosure of specific results and data would be somewhat cumulative regarding infringement.

Additionally, the timeliness of Hitkansut's motion is problematic. While there is no specified time for filing a motion to compel, *see* RCFC 37, "courts generally look[] to the deadline for completion of discovery in considering whether a motion to compel has been timely filed." *Days Inn Worldwide, Inc. v. Sonia Invs.*, 237 F.R.D. 395, 397 (N.D. Tex. 2006). A

---

[11]This description presumes familiarity with the claim construction reflected in *Hitkansut II*.

motion is timely when "filed sufficiently in advance of the discovery deadline . . . to allow it to be heard by [the] court, and if granted, to allow the compelled discovery to be produced prior to the deadline." *Id.* at 398. Hitkansut filed its motion on July 30, 2014, almost two years after fact discovery opened on September 4, 2012 and a single day before fact discovery was set to close. Hitkansut could not have reasonably expected the court to hear the matter or the government to produce the requested documents in a single day. Hitkansut has offered no explanation for its delay, even though the government put Hitkansut on notice of its intention to withhold the requested documents in November 2012. Def.'s Data Opp'n at 5.

For the foregoing reasons, the court denies Hitkansut's motion, without prejudice to a renewed showing of specific need, demonstrating a more apparent imbalance between need and burden and a showing that the evident untimeliness was justified by circumstances.

*D. Discovery of "Classified" Information from Oak Ridge*

Hitkansut's third motion petitions the court to compel Oak Ridge to disclose files and documents which contain "[i]nformation and documents proving whether or not any of the [projects subject to a security classification] utilize a non-classified patented method of applying two energy sources to change the physical properties of materials in a faster manner." Pls.' Classified Mot. at 1. Hitkansut's reply explains that it is asking the court only to require the government to provide information on the processes used in and for the classified projects, not to disclose the nature, captions, or sponsoring agencies of those projects. Pls.' Reply Br. in Support of Its Mot. to Compel Disc. Relating to "Classified" Info. ("Pls.' Classified Reply") at 3, ECF No. 88.[12] Even so, at several points in its briefing of this motion, Hitkansut contends that the projects identified by the government are not validly subject to a security classification. Pls.' Classified Mot. at 1. But, even assuming that the programs are appropriately classified, Hitkansut emphasizes that the processes used to treat the materials involved would not themselves be classified, especially given that the government has already anonymously enumerated the projects and disclosed costs. *Id.* at 9; Pls.' Classified Reply at 2.

The government's response is two-fold. First, the government argues that the scope of the discovery requested by Hitkansut exceeds the subject matter of its present action because some of the projects employ operations other than the thermo-magnetic processes, which are alleged in the Complaint to be the only infringing use by Oak Ridge of the '722 patent. *See* Def.'s Classified Opp'n at 9-10; *see also* Pls.' Data Mot. Ex. A, at 4. Hitkansut's request is indeed overbroad, encompassing information on whether a "method of applying two energy sources to change the physical properties of materials in a faster manner" was used in any of its classified projects. Pls.' Classified Mot. at 1. Although Hitkansut insists that "[b]roadly, the claims of the '722 patent relate to a process of concurrently using two different energies in a certain manner to achieve a certain result," Pls.' Reply in Support of its Mot. to Compel

[12]Specifically, plaintiffs request information regarding whether the projects involve "treatment of materials to accelerate the rate in which physical properties, such as residual stress, are changed" and whether "the process[] involve[s] use of (1) a superconducting magnet (or other form of oscillation) and (2) an induction heater (or heat in any way)." Pls.' Classified Reply at 3.

Production of Docs. from the Def. at 1, ECF No. 87, Hitkansut's Complaint limits its claims against the government to those involving exclusively thermo-magnetic energy sources. Compl. ¶ 34. Therefore, the information requested relating to programs and projects using non-thermo-magnetic energy sources is irrelevant and need not be disclosed.

With respect to certain Oak Ridge programs and projects employing a thermo-magnetic processing method, the government maintains that the programs were properly classified and are protected either by their classified designation or under the state-secrets privilege.[13] To assert a classified privilege, "the head of the pertinent government department must formally invoke the privilege on behalf of the government." *Crater Corp. v. Lucent Technologies, Inc.*, 423 F.3d 1260, 1265 (Fed. Cir. 2005). The court must then, "after reviewing the declarations of government officials" and considering the surrounding circumstances, determine whether invocation of the privilege is appropriate. *Id*.[14]

The government has sufficiently demonstrated the proper classification of the identified programs through the declaration of Mr. Christopher D. Poe, a senior classification official at Oak Ridge, who confirmed that the programs are classified. Def.'s Classified Opp'n at Appx. GA241-43. Notwithstanding this compelling support for the classified status of the projects, the government has offered to provide for *in camera* review by the court of "summary declarations of knowledgeable persons" about the programs. *Id*. at 21. In light of the procedural posture of the case, however, the court finds that there is no reason to undertake that step at this time and reserves that issue for consideration after the resolution of pending motions concerning invalidity

[13]The government suggests that consideration of the state-secrets privilege be deferred, Def.'s Classified Opp'n at 21-2, observing that the state-secrets privilege, which allows the government to prevent discovery of information that would adversely affect national security, "is not to be lightly invoked," *United States v. Reynolds*, 345 U.S. 1, 7 (1953). If the state-secrets privilege has been properly imprecated, "the role of the court is a limited one," *Tilden v. Tenet*, 140 F. Supp. 2d 623, 626 (E.D. Va. 2000), such that "in exceptional circumstances courts must act in the interest of the country's national security to prevent disclosure of state secrets, even to the point of dismissing a case entirely," *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077 (9th Cir. 2010) (en banc) (citing *Totten v. United States*, 92 U.S. 105, 107 (1876)).

[14]This is the first step in a tripartite analytical trial process identified by the Fourth Circuit for judicially addressing a claimed state-secrets privilege:

> At the outset, the court must ascertain that the procedural requirements for invoking the state secrets privilege have been satisfied. Second, the court must decide whether the information sought to be protected qualifies as privileged under the state secrets doctrine. Finally, if the subject information is determined to be privileged, the ultimate question to be resolved is how the matter should proceed in light of the successful privilege claim.

*El-Masri v. United States*, 479 F.3d 296, 304 (4th Cir. 2007); *see also McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1021-24 (Fed. Cir. 2003) (explicitly recognizing the first and second analytical steps, and inherently applying the third step).

pursuant to 35 U.S.C. § 112. *See supra*, at 2 n.2. Accordingly, the court need not now reach the issue of the state-secrets privilege. *See Al-Aulaqui v. Obama*, 727 F. Supp. 2d 1, 53 (D.D.C. 2010) (noting that the court should not reach the state-secrets privilege "if the case can be resolved on . . . other grounds").

**CONCLUSION**

For the reasons stated, plaintiffs' motion to compel documents from Eaton is DENIED. Plaintiffs' motions to compel the production of documents from the government and to compel the disclosure of classified information are also DENIED. Plaintiffs' motion for an enlargement of time to complete factual discovery is GRANTED. The parties shall complete factual discovery on or before November 17, 2014.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge