# In the United States Court of Federal Claims

No. 12-303C

(Filed: May 11, 2016)

| | | |
|---|---|---|
| ********************************** | ) | Patent case; pre-trial motions *in limine* |
| | ) | |
| **HITKANSUT LLC, a Michigan corporation, & ACCELEDYNE TECHNOLOGIES, LTD., LLC, a Michigan corporation,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |
| ********************************** | | |

John S. Artz, Dickinson Wright, PLLC, Troy, Michigan, for plaintiffs. With him on the briefs were John A. Artz, Bryan J. Schomer, and Franklin M. Smith, Dickinson Wright, PLLC, Troy, Michigan.

Gary L. Hausken, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, John Fargo, Director, and Benjamin S. Richards, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

Pending before the court in this patent case are six motions *in limine* filed by plaintiffs ("Hitkansut") and one motion *in limine* filed by the United States ("government"), each seeking to exclude evidence from the trial scheduled to begin May 23, 2016. The motions have been fully briefed, and oral argument is unnecessary to their resolution.

## BACKGROUND

Plaintiffs (collectively "Hitkansut") assert that their licensor, Ms. Donna Walker, invented

> a unique method for improving the mechanical and physical properties of manufactured metal parts (strength, durability, longevity, etc.) and to do so in a much faster way

> (minutes vs. hours; hours vs. days) and with much less use of energy (tens of BTUs vs. thousands of BTUs). The method generally includes subjecting the manufactured metal parts ("structures") to two separate and overlapping energy sources[, *e.g.*,] (heat and vibration, or heat and magnetism) under certain conditions until the state of activation energy of the metal parts ha[s] been met.

*Hitkansut LLC v. United States*, 115 Fed. Cl. 719, 721 (2014) ("*Hitkansut III*"). Ms. Walker was granted U.S. Patent No. 7,175,722 ("the '722 patent") on February 13, 2007. *Id.* In a complaint filed May 10, 2012, the plaintiffs alleged that the government, acting through Oak Ridge National Laboratory ("Oak Ridge") and its contractual partners, is using this patented method in experiments and developmental studies and is therefore infringing claims of the '722 patent. Compl. ¶¶ 22, 45 & Ex. A ('722 patent). This court issued an opinion construing the claims on July 31, 2013, *Hitkansut LLC v. United States*, 114 Fed. Cl. 410 (2013) ("*Hitkansut II*"), and thereafter entered partial summary judgment in favor of the government, holding that four of the seven claims were invalid, *Hitkansut III*, 115 Fed. Cl. at 721 (concluding that three of seven claims were ineligible for patent protection under 35 U.S.C. § 101); *Hitkansut LLC v. United States*, 119 Fed. Cl. 258, 268 (2014) ("*Hitkansut V*") (concluding that one of the seven claims, a dependent claim, was invalid because it failed to specify a further limitation on the pertinent independent claim pursuant to 35 U.S.C. § 112, Paragraph 4 (2006)).[1]

At issue in the trial are three remaining claims: Claim 1, Claim 6, and Claim 11. Claim 1 is an independent claim, on which Claim 6 depends. '722 patent at 19. Claim 11 is an independent claim. For brevity, the court will set forth only the terms of Claim 1. That claim describes:

> A method of changing a physical property of a structure, comprising:
>
> [1] providing a first energy to a structure by performing a first energy process according to an operational setting, at least one of the operational setting and a time value being selected according to a first order rate relationship for the first energy process, according to a first order rate relationship for a second energy process, and according to a desired physical property value; and
>
> [2] providing a second energy to the structure by performing the second energy process;
>
> [3] wherein the first and second energy processes are performed concurrently for at least the time value;
>
> [4] wherein the first order rate relationship for the first energy process relates application of the first energy to the structure and a physical property of the structure;
>
> [5] wherein the first order rate relationship for the second energy process relates application of the second energy to the structure and the physical property;

[1] Two other prior opinions addressed discovery disputes. *Hitkansut LLC v. United States*, 111 Fed. Cl. 228 (2013) ("*Hitkansut I*"), concerned a discovery dispute regarding access to information related to or derived from cooperative research and development agreements between Oak Ridge and private entities. *Hitkansut LLC v. United States*, 119 Fed. Cl. 40 (2014) ("*Hitkansut IV*"), addressed subsequent disputes arising over discovery from nonparties and access to classified records.

> [6] wherein the first and second energies are different;
>
> [7] wherein the total energy provided to the structure by the first and second energy processes is above an activation energy for the material of the structure;
>
> [8] wherein the first energy is thermal and wherein the second energy is oscillatory;
>
> [9] wherein the operational setting is a temperature setting, wherein one of the temperature setting and the time value is selected according to the first order rate relationship for the first energy process, according to the first order rate relationship for the second energy process, according to the desired physical property value, and according to the other one of the temperature setting and the time value; and
>
> [10] wherein the first order rate relationship for the first energy process is a first Larson[-]Miller relationship that relates application of thermal energy to the structure and the physical property, and wherein the first order rate relationship for the second energy process is a second Larson[-]Miller relationship that relates application of oscillatory energy to the structure and the physical property.

’722 patent, Claim 1. The government contends that Oak Ridge is not infringing the claims at issue because Oak Ridge “does not select time or operational settings according to a Larson-Miller relationship,” Def.’s Pre-Trial Br. at 13, ECF No. 144, and because Oak Ridge does not use an “oscillatory” source of energy, *id.* at 14. The government also contends the claims are invalid as unpatentable laws of nature, obvious owing to prior art, and not properly enabled. *Id.* at 19-38.

## STANDARDS FOR DECISION

### A. *Discovery Obligations Pursuant to Rules 16 and 26*

The *in limine* motions primarily concern compliance with discovery obligations arising from Rules 16 and 26 of the Rules of the Court of Federal Claims (“RCFC”). RCFC 16 relates to orders by the court controlling and scheduling discovery, *see, e.g.*, RCFC 16(b)(1), (3), and in this court that rule is complemented by the case management provisions set out in RCFC App. A. RCFC 26 generally governs the discovery process. Pursuant to RCFC 26(a)(1)(A)(i), all parties must initially disclose, without awaiting requests from their opponent, the “name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.” After making initial disclosures under RCFC 26(a), parties may request discovery from each other “regarding any nonprivileged matter that is relevant to any party’s claim or defense.” RCFC 26(b)(1); *see also* RCFC 26(d). Expert witness discovery is also governed by RCFC 26, which requires parties to disclose the identities of experts and to accompany those disclosures with expert reports. RCFC 26(a)(2)(A)-(B). These reports “must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them.” RCFC 26(a)(2)(B).

After making discovery disclosures, a party has an ongoing obligation under RCFC 26(e)(1)(A) to “supplement or correct” those disclosures “in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the

additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Subparagraph 26(e)(1)(A) is "narrow" and "only permits supplemental reports for the purpose of 'correcting inaccuracies or adding information that was not available at the time of the initial report.'" *SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 194 (D.D.C. 2014) (quoting *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)).

If a party contravenes these rules, the court has discretion to impose sanctions under RCFC 37. In particular, a party who violates RCFC 26(a) or (e) is subject to sanction unless the court determines the violation is "substantially justified" or "harmless." RCFC 37(c)(1). In making that determination, the court may consider surprise to the other party, whether there is opportunity to cure that surprise, the proponent's need for the evidence at trial, or other factors. *Scott Timber, Inc. v. United States*, 93 Fed. Cl. 221, 226-27 (2010) (citing *Westefer v. Snyder*, 422 F.3d 570, 584 (7th Cir. 2005), *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003), and *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)); *see also Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (same); *DCK TTEC, LLC v. Postel Indus., Inc.*, 602 Fed. Appx. 895, 897-98 (3d Cir. 2015) (same).

RCFC 16(b) gives the court discretion in issuing scheduling orders. Discovery scheduling orders serve "to protect the parties from a continuing burden of producing evidence and to assure them adequate time to prepare immediately before trial." *Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1347 (9th Cir. 1984). Notably, in patent cases, 35 U.S.C. § 282(c) provides that parties must give notice of a prior art patent at least thirty days before trial. But that statutory minimum "coexists" with the federal rules of procedure, meaning that the court's discovery orders may mandate earlier disclosure. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998).

### B. *Fed. R. Evid. 702*

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact . . . ; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d). Pursuant to Fed. R. Evid. 104(a), a trial judge must determine "at the outset" whether an expert witness is qualified or whether his or her opinions constitute admissible evidence. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). "These matters should be established by a preponderance of proof." *Id.* at 592 n.10 (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).

## ANALYSIS

A. *Plaintiffs' Motion to Strike Defendant's Allegedly Untimely Discovery Responses*

1. *Defendant's proffer of previously undisclosed prior art.*

During fact discovery, defendant cited four patents and four articles as prior art supporting a finding of invalidity. *See* Pls.' First Motion to Strike Untimely Discovery Responses ("Pls.' First Mot. to Strike") at 7, ECF No. 148. On June 15, 2015, after fact discovery had closed but during expert discovery, defendant proffered eight additional patents and four additional articles as prior art. *Id.* Plaintiffs contend that defendant's proffer of this additional prior art violates this court's operative scheduling order and RCFC 26(a). *Id.* at 1-7. In essence, the additional prior art provided the factual underpinnings of an expert's opinion on invalidity, and thus would have been appropriate as a portion of an answer to a contention interrogatory and accompanying document production request.[2]

Fact discovery closed November 14, 2014. *See Hitkansut IV*, 119 Fed. Cl. at 51 (modifying Am. Scheduling Order of Feb. 18, 2014, ECF No. 62). Expert discovery did not

[2]Plaintiffs' Interrogatory No. 4 and Request for Production of Documents No. 8 were the relevant discovery requests. Interrogatory No. 4 called upon defendant to

> [s]tate the complete basis for Defendant's assertion that the Patent is invalid, void and/or unenforceable under one or more of §§ 102, 103, and 112 of Title 35 of the United States Code or for any other reason, including as alleged in the Answer at Affirmative Defenses B and C.

Pls.' First Mot. to Strike at 4 (quoting the interrogatory). Document production request No. 8 asked defendant to provide the pertinent documents, *viz.*, "All documents and things which Defendant contends affect the validity and/or scope of the '722 Patent." *Id.* (quoting the document production request).

The government argues that "a party's contentions and the evidence that supports those contentions are not fact discovery." Def.'s Opp'n to Mot. to Strike at 6, ECF No. 157 (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) (commenting that discovery of party's theories and the contentions that support those theories "are often postponed until the close of discovery, . . . or are amended as a matter of course during the discovery period")). The court need not rule on or adopt the government's position in this case. Contention interrogatories have a factual element and can be a useful device in narrowing issues. See 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* ("*Wright and Miller*") § 2001 (3d ed. 2010). But, as *Wright & Miller* observes, courts should allow amendments to responses to contention interrogatories as parties develop an understanding of the case. *Id*. § 2181.

begin until nearly a year later. *See* Scheduling Order of May 11, 2015, ECF No. 133.[3] The scheduling order regarding expert discovery required the parties to identify experts on or before June 1, 2015. *Id.* Plaintiff's initial expert report on infringement was due June 29, 2015. *Id.* Defendant's initial expert report on invalidity was due June 30, 2015. *Id.* Both parties' responsive reports were due on August 21, 2015 and were to be followed by reply reports on October 9, 2015. *Id.* The scheduling order directed the parties to engage in expert depositions between October 9, 2015 and November 20, 2015. *Id.* At the outset of this process governing expert discovery, on June 15, 2015, the government disclosed the additional prior art at issue in this motion. *See* Pls.' First Mot. to Strike at 6-7.

In this case, a question arises whether all prior art had to be disclosed during fact discovery. In their Joint Preliminary Status Report filed August 30, 2012, ECF No. 8, the parties had proposed serving initial disclosures and then opening fact discovery on September 4, 2012, *id*. at 16. Under the proposed schedule, plaintiff would serve "Disclosure of Asserted Claims and Infringement Contentions," *id*., and the parties would exchange proposed claim terms for construction and otherwise prepare for claim construction, *id*. at 17. Intermediate in this process, the parties proposed that the government be required to "serve its 'Disclosure of Prior Art, and Invalidity and Infringement Contentions,'" and in that connection specifically provide "[t]he identity of each item of prior art that anticipates the claim or renders it obvious." *Id*. This latter proposal was not adopted by the court. Instead, the court issued a Scheduling Order that largely addressed preparatory steps for claim construction. *See* Order of Sept. 6, 2012, ECF No. 9. As a result, the disclosure of prior art was left to the ordinary processes of fact and expert discovery.[4]

---

[3]The interval between the close of fact discovery and the advent of expert discovery was taken up by efforts by the parties and the court to resolve disputes over discovery of information from nonparties and disputes regarding access to classified records and information. *See Hitkansut IV*, 119 Fed. Cl. at 42-43; *see also* Orders of Mar. 10, 2015 and Mar. 11, 2015, ECF Nos. 125, 126, 127 & 128.

[4]Some local rules for patent cases are designed to force patent litigants "to pin down" their theories of infringement and invalidity early to permit adequate preparation for trial. *See O2 Micro*, 467 F.3d at 1365-66 (explaining the theory underlying the local rules of the District Court for the Northern District of California). In this case, however, the court concluded that early use of contention interrogatories would not be helpful because of the evident questions regarding patentability of subject matter. Instead, an early focus on claim construction would be more appropriate.

In other circumstances also, use of contention interrogatories can be problematic if not timed to fit the needs of the case. *See In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985):

> There is substantial reason to believe that the early . . . filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings . . . can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel.

Here, because the government later offered additional prior art not previously disclosed in response to the fact discovery requests set out *supra*, at 5 n.2, the propriety of the later disclosure must be analyzed under RCFC 26(e)(1)(A). The further prior art disclosures were arguably improper because they did not correct a prior disclosure but rather were offered as a supplement to bolster and change defendant's position on a matter as to which defendant had the burden of proof. The question thus becomes whether the later disclosures are harmless or substantially justified pursuant to RCFC 37(c). *See Scott Timber*, 93 Fed. Cl. at 226 (discussing factors for weighing harm and justification).

Factually, the government's additional disclosure occurred approximately two weeks before the due date of June 30, 2015 for its own expert report on invalidity. The disclosure was also more than two months before August 21, 2015, the due date for plaintiffs' responsive expert report on validity, and it was four months prior to the opening of expert depositions on October 9, 2015. Surveying these circumstances, the court concludes that the government's supplementation is justified and plaintiffs have not been genuinely surprised or harmed. Plaintiffs do not explicate how the additional disclosure prejudiced them – there is no assertion that their expert was unable to analyze and address this prior art or that any other harm resulted, apart from an assertion by plaintiffs that defendant had adopted a "new invalidity position." Pls.' Reply Supporting First Mot. to Strike at 4, ECF No. 161. *Compare Convolve, Inc. v. Compaq Computer Corp.*, 643 F. Supp. 2d 336, 344 (S.D.N.Y. 2008) (commenting that, in general, the "utility of adding a prior art reference" depends upon "expert analysis of its significance."), *with Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 470 (D. Del. 2006) (concluding that disclosure of 50 new prior art references was untimely and prejudicial when filed two weeks before expert report on validity was due), *rev'd and remanded on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008), *and Abbott Labs. v. Syntron Bioresearch, Inc.*, No. 98-2359, 2001 WL 34082555, at *3 (S.D. Cal. Aug. 24, 2001) (barring party from using prior art at trial when it disclosed that prior art after the close of all discovery and after pretrial order, so the opposing party's expert had not had a chance to review it). Instead, plaintiffs and their expert had the full time contemplated by the scheduling order of May 11, 2015 to consider and rebut defendant's expert report on invalidity. Although plaintiffs may not have anticipated the government's additional disclosure or the government's elaborated invalidity position, the cited further prior art touched on the same topical areas as the government's earlier disclosures. Notably also, the disclosure of additional prior art nearly eleven months ago has no potential to disrupt the trial. Rather, at this juncture, given the fact that all the expert reports have taken the further prior art into account, the trial

---

*Id.* at 337-38; *see also Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741-RS(MEJ), 2016 WL 1039029, at *3 (N.D. Cal. Mar. 15, 2016) (stating in a patent case that where support for contentions had already been provided pursuant to local patent rule, "courts in this district have placed 'a burden of justification' on a party who seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed" (quoting *In re Convergent*, 108 F.R.D. at 338)); *cf. McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 287 (N.D. Cal. 1991) (holding that appropriately timed contention interrogatories in a patent infringement action were a suitable means of establishing infringers' contentions), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991).

soon to begin would be disrupted by an order barring defendant from using this prior art. The pertinent motion *in limine* by plaintiffs is denied.

2. *Defendant's September 2015 disclosure of updated financial data.*

In response to plaintiffs' fact discovery requests, the government disclosed financial data regarding "the amounts of money during 2007 to December 2013 that [d]efendant[] utilized relative to the accused process." Pls.' First Mot. Strike at 12. On December 11 and 12 of 2013, plaintiffs then deposed two of the government's employees as fact witnesses, questioning them about those data. *Id*. at 12 n.5. On June 17, 2015, plaintiffs requested further financial information from the government regarding the subsequent time period, *i.e.*, from December 2013 to present. *See id*. at 12 & Ex. J (e-mail from plaintiff to defendant requesting these data). In effect, the plaintiffs sought financial information covering the period after plaintiffs' deposition of the two government employees. In September 2015, the government provided the requested information, but also amended slightly the pre-December 2013 data provided in the original disclosure. *Id.*; *see also* Def.'s Opp'n to Mot. to Strike at GA 45-46 (the government's 2013 and 2015 spreadsheets). As the government concedes in its brief, its disclosure in September 2015 changed the dollar value for project numbers IAN 43WV61902 and 14B684401. Def.'s Opp'n to Mot. to Strike at 19. The government explains that the "decrease [that was shown] is due to the de-obligation and return of all remaining funds to the sponsor in March FY2014 when the project was closed out." *Id*. Thus the amendment to the pre-2013 data was due generally to post-2013 events.

Under the circumstances, the court finds the supplementation to be untimely yet harmless and justified under RCFC 26 and 37, principally because the changes were due to events occurring after the initial response had been provided. The small overall discrepancy – roughly $2500 – between the original figures and the updated figures also indicates that the change is insignificant. Def.'s Opp'n to Mot. to Strike at 20. Even if the revised information were as harmful as plaintiffs insist, they could have and should have addressed that harm in the early fall of 2015 when they received the supplemental data, not shortly before trial. Plaintiffs' motion *in limine* is unavailing.

B. *Plaintiffs' Motion to Strike Documents Produced by Defendant's Damages Expert*

During his expert deposition on November 5, 2015, defendant's damages expert, Mr. Daniel McGavock, referred to several documents that were neither cited in nor attached to his expert report on damages and similarly were not addressed in his reply report. *See* Pls.' Mot. to Strike Documents Disclosed by Def.'s Damages Expert ("Pls.' Second Mot. to Strike") at 2, ECF No. 150. The documents were (1) four documents identified by Bates Numbers ORL118-000001, ORL118-000005, ORL119-000001, and ORL119-000004; (2) a citation to this court's decision in *Liberty Ammunition, Inc. v. United States*, 119 Fed. Cl. 368 (2014); and (3) an article by Thomas R. Varner titled "An Economic Perspective on Patent Licensing Structure and Provisions." *Id.* Plaintiffs argue that the disclosures made in Mr. McGavock's deposition on November 5, 2015 were untimely, and that Mr. McGavock cannot refer to or rely upon documents other than those listed in an appendix to his report dated August 21, 2015. *Id.*

Beginning with the "ORL" documents, even if plaintiffs are correct that these disclosures are untimely, defendant's expert's reference to these documents on November 5, 2015 is "harmless" or "substantially justified" supplementation within the meaning of RCFC 37. *See Scott Timber*, 93 Fed. Cl. at 226. There is no surprise because plaintiffs' expert referred to these documents in his reply of October 9, 2015, showing that plaintiffs could expect them to arise or be mentioned during depositions. *See* Def.'s Opp'n to Pls.' Second Motion to Strike at 7 & GA19-22, ECF No. 164. The very purpose of a reply is to address new material bearing on a subject. These documents also play, at most, a small role in this case, mitigating any potential harm.

Turning next to defendant's expert's citation of *Liberty Ammunition*, plaintiffs concede this issue. *See* Pls.' Reply in Support of Second Motion to Strike at 2, ECF No. 169 ("Plaintiffs have no trouble with McGavock's listing of the *Liberty Ammunition* case since [p]laintiffs' damage expert first raised it in his opposition."). Turning finally to the Varner article, plaintiffs have failed to articulate a theory of harm. Given the minimal role this article appears to play and the fact that it was disclosed before the close of expert discovery, the court finds any error harmless and justified.

### C. *Plaintiffs' Motion* in Limine *to Preclude Defendant from Relying on Documents Not Produced During Discovery*

In 2012, plaintiffs sought discovery of data resulting from Oak Ridge's allegedly infringing experiments. *See Hitkansut IV*, 119 Fed. Cl. at 49. The government refused to disclose those data, arguing that the information was not relevant. *Id.* In this motion *in limine*, plaintiffs contend that at trial defendant will argue that the data are relevant and that plaintiffs' failure to present the experimental results shows that Oak Ridge is not infringing. Pls.' Mot. *in Limine* to Estop Def. from Relying on Absence of Data Not Disclosed During Discovery ("Pls.' Mot. to Estop") at 2, 8 & Ex. D (August 21, 2015 Non-Infringement Report of Alan P. Druschitz), ECF No. 152. Plaintiffs contend that such a reversal of positions would violate the doctrine of judicial estoppel set out in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), which held that courts have equitable authority to stop parties from unfairly taking inconsistent positions. *Id*. at 8-11. They ask the court to bar defendant from taking such a position at trial and to draw an adverse inference against defendant for failure to disclose the data. *Id*. at 11-12.

Notably, this issue has already been litigated by the plaintiffs in their motion to compel filed in 2014, which this court denied. *Hitkansut IV*, 119 Fed. Cl. at 49. The issue dates back to November 2012, when the government notified plaintiffs that the data would not be disclosed. Plaintiffs did not at that time request intervention by the court. They instead waited until July 30, 2014, one day before fact discovery closed, to file a motion to compel discovery. *Id.* In response, the government argued the motion was untimely and that the data was irrelevant. *Id.* The court agreed with plaintiffs that the data could be relevant, but it nonetheless denied plaintiffs' motion to compel. *Id.* The court began by stating that

> [d]ata relating to the government's experimentation using thermo-magnetic processes are both relevant and typically admissible. . . . Nonetheless, Oak Ridge already has admitted its use of thermo-magnetic processes, and disclosure

> of specific results and data would be somewhat cumulative regarding infringement. Additionally, the timeliness of Hitkansut's motion is problematic. . . . Hitkansut could not have reasonably expected the court to hear the matter or the government to produce the requested documents in a single day. Hitkansut has offered no explanation for its delay, even though the government put Hitkansut on notice of its intention to withhold the requested [data] in November 2012.

*Id.* For those reasons the court denied Hitkansut's motion "without prejudice to a renewed showing of specific need, demonstrating a more apparent imbalance between need and burden and a showing that the evident untimeliness was justified by circumstances." *Id.* Hitkansut never filed a renewed motion, even after it received defendant's expert report in August 2015, which report is the basis for plaintiffs' current belief that the government will at trial argue the data is relevant. Rather, plaintiffs filed this motion on the eve of trial seeking an adverse inference.

The court assuredly concurs that it would be unfair for a litigant to argue that evidence is irrelevant pre-trial and then to argue during trial that a lack of that evidence proves an absence of material fact. But defendant's pre-trial brief and expert reports apparently do no such thing. Defendant instead argues that Oak Ridge does not select operational settings according to a Larson-Miller relationship. *See* Pls.' Mot. to Estop. at 9 (citing Def.'s Pre-Trial Br. at 14). That is not the same as arguing that process data are required to show infringement or that a lack of those data is fatal to plaintiffs' case. The deposition testimony of defendant's expert, Dr. Alan P. Druschitz, clarifies that the government is making a factual argument that the testimony of witnesses, along with the other evidence such as lab notes, do not evince the use of Larson-Miller relationship to select operational settings. *See id*. Ex. E (Druschitz Dep.) at 213:5-13). Although Dr. Druschitz did comment on a lack of data in his deposition, his comments were in response to plaintiffs' counsel's questioning on the point, and his opinion seemingly does not rely on the absence-of-data rationale in those comments. *Id.* Ex. E, at 214:5-19. The doctrine of judicial estoppel, which in any event permits parties to change positions fairly within the same case, *see SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1291 (Fed. Cir. 2005), is thus inapposite.

With this motion *in limine*, plaintiffs are attempting to relitigate the 2014 motion to compel. Having failed to compel discovery of data from Oak Ridge's experiments, they are now seizing on defendant's potential trial posture as a basis to win an adverse inference. The court understands that plaintiffs would like to have the data and may even believe it is essential to their case. But their attempt to discover it was already denied on procedural grounds as cumulative and untimely. *Hitkansut IV*, 119 Fed. Cl. at 49. Plaintiffs' motion to estop accordingly is not persuasive.

D. *Plaintiffs' Motion* in Limine *to Exclude Infringement Testimony of Dr. Druschitz*

Plaintiffs argue that Dr. Druschitz should be barred from testifying about non-infringement because his opinion is unreliable, methodologically flawed, and based on improper data. Pls.' *Daubert* Mot. to Strike Expert Report of Dr. Druschitz on Non-Infringement ("Pls.'

First *Daubert* Motion") at 4, ECF No. 153. In other words, plaintiffs take issue only with elements (b) and (c) of Fed. R. Evid. 702, *viz.*, whether "(b) the testimony is based on sufficient facts or data" and whether "(c) the testimony is the product of reliable principles and methods." *Id.* at 3 ("The key factors are [those two elements] in this instance.").[5]

Plaintiffs contend that Dr. Druschitz's approach was improper because he failed to analyze all elements of each claim at issue, instead focusing his analysis on only seven out of ten elements in Claim 1, the same seven out of eleven elements in Claim 6, and three out of five elements of Claim 11. *Id.* at 5.[6] Plaintiffs misunderstand Dr. Druschitz's role as a defense witness who is rebutting plaintiffs' infringement allegations. For plaintiffs to prevail, they must prove that Oak Ridge uses every claimed element of the plaintiffs' patent. *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)). For this reason, plaintiffs' infringement expert must address whether the accused method practices each element of the plaintiffs' patent. *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127-LPS-MPT, 2014 WL 529983, at *6 (D. Del. Feb. 7, 2014) (excluding plaintiff's expert on infringement for failure to analyze each element of the patent). But as a corollary of this rule, a defendant need only rebut a plaintiff's case as to one element of the patent. *E.g.*, *Research Found. of State Univ. of New York v. Mylan Pharms. Inc.*, 723 F. Supp. 2d 638, 647 (D. Del. 2010) (analyzing defendant's argument that its product infringed upon all but one of the elements in the claim at issue). Thus a defendant's rebuttal expert on non-infringement may properly testify about only one element of the patent that he or she believes is absent from the accused product or process. Accordingly, plaintiffs' argument – that Dr. Druschitz's report is methodologically flawed because it does not analyze each element – fails. *See Greatbatch Ltd. v. AVX Corp.*, No. 13-723, 2015 WL 9171042, at *2 (D. Del. Dec. 11, 2015) (holding that a rebuttal expert in a patent case need not respond to every argument raised because the rebutting party did not bear the burden of proof). By focusing on only seven out of ten elements in Claim 1, for example, the government has made a strategic decision to not have its expert rebut the presence of some elements of Claim 1 in Oak Ridge's experiments. That strategic decision may actually make it easier for plaintiffs to prove infringement. Despite plaintiffs' arguments to the contrary, Dr. Druschitz's non-infringement report demonstrates that he reviewed this court's claim construction opinion and the relevant evidence in this case, including the principal Oak Ridge researcher's notes, Oak Ridge's public

---

[5]Plaintiffs' reply brief supporting their first *Daubert* motion raises a variety of new arguments not made in their initial brief. These arguments are waived. *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (concluding arguments raised for the first time in a reply brief were waived).

[6]Plaintiffs do not contest Dr. Druschitz's qualifications. Dr. Druschitz has a Ph.D. in Metallurgical Engineering from the Illinois Institute of Technology, and he has worked as an associate professor in the Department of Materials Science and Engineering at Virginia Polytechnic Institute and State University since 2011. Def.'s Opp'n to Pls.' First *Daubert* Mot. at GA2-4, ECF No. 166. He has also served as the president and vice-president of the Ductile Iron Society, and he worked as a staff engineer at General Motors Corporation. *Id.* His research work includes performance testing and heat treatment of various materials such as iron, aluminum, copper, steel, and magnesium alloys. *Id.*

reports, and the evidence cited in Appendix D of plaintiffs' expert report on infringement. *See* Pls.' First *Daubert* Mot. Ex. A at 3, 10-14 (Dr. Druschitz's non-infringement report). The stated bases for Dr. Druschitz's report and opinion pass muster as an initial matter.

Plaintiffs next argue that Dr. Druschitz's report and testimony are flawed because he "did not specify a standard of proof" and because he did not comprehend the preponderance-of-the-evidence standard applied by the courts when analyzing patent infringement claims. Pls.' First *Daubert* Mot. at 6-7. However, Dr. Druschitz is an expert on materials science, not the law, so he may testify "even if unaware of what burden of proof will ultimately be required." *Formax, Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-298, 2014 WL 3057116, at *2 (E.D. Wisc. July 7, 2014) (rejecting plaintiff's argument that a defense expert on obviousness must be aware of the "clear and convincing" evidentiary standard applicable to that defense); *cf. Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008) (noting that experts must not invade the province of the court to decide matters of law). Accordingly, plaintiffs' first *Daubert* motion to exclude Dr. Druschitz's testimony is denied.

E. *Plaintiffs'* Daubert *Motion to Exclude Dr. Druschitz's Testimony and Report on Invalidity*

Plaintiffs additionally challenge Dr. Druschitz's obviousness analysis. Pls.' *Daubert* Mot. to Exclude the Invalidity Expert Reports of Dr. Druschitz ("Pls.' Second *Daubert* Mot.") at 1, 3-5, ECF No. 154. Plaintiffs assert that Dr. Druschitz's methods are flawed with respect to his opinion on obviousness because he did not comment on "secondary considerations" within the meaning of *Graham v. John Deere Co.*, 383 U.S. 1, 12-13 (1966). *Id.* at 12. That argument incorrectly assumes that secondary considerations are part of defendant's burden in proving obviousness. Instead, "[e]vidence of secondary considerations is in the nature of rebuttal evidence. . . . [A] patentee typically comes forward with proof of secondary considerations of validity, or 'non-obviousness,' in rebuttal to a patent challenger's *prima facie* case of obviousness." *ABB Air Preheater, Inc. v. Regenerative Env'l Equip. Co.*, 167 F.R.D. 668, 672 (D.N.J. 1996). Because the defendant does not have the burden of showing secondary considerations, Dr. Druschitz need not address secondary considerations in his report. *See Greatbatch*, 2015 WL 9171042, at *2 (holding that plaintiff's responsive expert report on non-obviousness did not need to address each defense argument of obviousness because plaintiff did not have the burden of proof).

Next, plaintiffs assert that Dr. Druschitz failed to use this court's claim construction opinion when analyzing the prior art for obviousness. Pls.' Second *Daubert* Mot. at 4. Having examined Dr. Druschitz's report, the court disagrees and instead concludes that he did use this court's claim construction. *See* Def.'s Opp'n to Pls.' Second *Daubert* Mot. at 11 & App. at GA80 (quoting Dr. Druschitz's statement during his deposition, which explained his reliance on the court's claim construction opinion), ECF No. 167.[7]

[7]Relatedly, plaintiffs argue that Dr. Druschitz did not take into account the court's prior opinions on patent-eligible subject matter and enablement. Pls.' Second *Daubert* Mot. at 16-18. As a result, they maintain that Dr. Druschitz's opinions on issues associated with 35 U.S.C. §§ 101 and 112 are "meaningless." *Id.* at 18. Because decisions on the application of those

Plaintiffs also argue that Dr. Druschitz's report must be stricken pursuant to RCFC 26(a)(2)(B) because he failed to consider appropriate evidence and failed to list in his initial report some of the sources he considered. Pls.' Second *Daubert* Mot. at 14-16, 18-20. It appears that Dr. Druschitz did omit some sources from his initial report but he corrected the omission by adding these sources to his second and third reports. *See id.* at 19 (quoting Dr. Druschitz's deposition testimony). To the extent Dr. Druschitz's initial report on invalidity was not fully compliant with RCFC 26(a)(2)(B), the reasonably prompt addition of the sources in later reports remedies the omission pursuant to RCFC 26(a)(2)(E) and RCFC 26(e).[8] Moreover, Dr. Druschitz did consider evidence relevant to this case.

Finally, plaintiffs renew their argument that Dr. Druschitz did not understand the pertinent burden of proof. Pls.' Second *Daubert* Mot. at 5. But the "fact that an engineer does not know the burden of proof or the difference between anticipation and obviousness . . . is not a reason to disqualify him." *Formax*, 2014 WL 3057116, at *3. Plaintiffs' motion to exclude Dr. Druschitz' expert reports on invalidity is accordingly denied.

F. *United States' Motion to Exclude the Testimony of Michael Walker*

Plaintiffs propose to call Mr. Michael Walker, the son of Ms. Walker, to testify as a fact witness about plaintiffs' "use and marketing of the '722 Patented Process, as well as [p]laintiffs' contacts and communications with [Oak Ridge] and others relative to the issues in this case." Pls.' Final Witness List at 2, ECF No. 145. Plaintiffs did not disclose any intent during discovery to call him as a witness, although his existence was known to all parties. *See* Pls.' Opp'n to Def.'s Mot. *in Limine* Exs. A-C (showing evidence of Mr. Walker's involvement with his mother's contacts to Oak Ridge), ECF No. 163. Plaintiffs acknowledge that they sought to contact Mr. Walker during discovery but failed to reach him because he was estranged from his mother for several years. *See id.* at 4. In December 2015, plaintiffs informed the government that Mr. Walker would be a witness. *Id*. They also included him in their final witness list pursuant to RCFC App. A, ¶ 13. That paragraph of Appendix A provides that the parties must "[e]xchange a list of . . . witnesses, including expert witnesses, who may be called at trial . . . . Any witness whose identity has not been previously disclosed shall be subject to discovery. As to each witness, the party shall indicate the specific topics to be addressed in the expected testimony." RCFC App. A, ¶ 13(b). The government argues that because plaintiffs did not disclose Mr. Walker during discovery, they violated RCFC 26(a)(1)(A) and RCFC 26(e)(1)(A). Def.'s Mot. *in Limine* at 3, ECF No. 156.

---

statutes is a matter for the court, Dr. Druschitz's failure to take the court's pertinent prior opinions into account would not bar his expert testimony.

[8]The court also finds that Dr. Druschitz's reply report as to invalidity was a proper reply and did not raise new arguments not made in the initial report. Although plaintiffs argue that Dr. Druschitz's reply raised new arguments, plaintiffs' motion does not indicate what those new arguments are. *See* Pl.'s Second *Daubert* Mot. at 19-20 (arguing the reply raised new arguments but providing no examples of such arguments).

By naming Mr. Walker as a witness on their list provided pursuant to Appendix A, ¶ 13(b), plaintiffs complied with applicable disclosure requirements. Plaintiffs' "listing of the challenged witness[] at the meeting of counsel as required by RCFC Appendix A, ¶ 13, constitutes the crucial, governing disclosure. RCFC 26(e)(1)(A) does not override RCFC Appendix A, ¶ 13(b), and thus does not require a result at variance with that paragraph of the Appendix." *Scott Timber*, 93 Fed. Cl. at 225. Although the government argues in its reply that the reliance in *Scott Timber* on RCFC Appendix A was incorrect, the government is taking a position contrary to that it has put forward previously. In prior instances, it has relied on Appendix A to its benefit. In *Globe Savs. Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 100-01 (2004), the court relied on RCFC Appendix A to allow *the government* to list two new witnesses in its final witness list pursuant to Appendix A, ¶ 13(b), notwithstanding the fact that they had not previously been identified as having discoverable information within the meaning of RCFC 26. In *CCA Assocs. v. United States*, 87 Fed. Cl. 715, 717-21 (2009), the court similarly relied on Appendix A, ¶ 13(b) in rejecting an *in limine* motion to preclude *the government* from calling two witnesses listed for the first time on its *final* witness list. In short, in this court, RCFC Appendix A governs case management, unless specifically overridden by an explicit court order. *See Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 614-15 (2005) (applying RCFC App. A, ¶ 13); *see also Scott Timber*, 93 Fed. Cl. at 225; *Globe Savs. Bank*, 61 Fed. Cl. at 100-01.

Even if plaintiffs had not timely supplemented their disclosure under RCFC 26(e)(1)(A) by the listing pursuant to RCFC Appendix A, ¶ 13(b), the court would find the error substantially justified. *Scott Timber*, 93 Fed. Cl. at 226-27. Mr. Walker's involvement with his mother's contacts to Oak Ridge was well known to all parties, mitigating any surprise to the government. The government's motion is denied.

Pursuant to Paragraph 13(b) of Appendix A, the government shall have the right to depose Mr. Walker. The parties shall find a mutually acceptable time and location for that deposition, each side bearing its own costs. With trial looming, plaintiffs should make Mr. Walker available promptly.

### G. *Plaintiffs' Motion for Admission of Designated Deposition Testimony in Lieu of Live Testimony*

Plaintiffs seek to admit various deposition excerpts in lieu of live testimony from some witnesses. *See* Pls.' Mot. for Admission of Designated Dep. Test., ECF No. 149. The United States has responded with counter-designations for completeness. Resp. of the United States to Pls.' Mot. for Admission of Designated Dep. Test., ECF No. 160. Plaintiffs' motion is granted, subject to objections to be raised at trial respecting particular questions and answers.

## CONCLUSION

The parties' motions are DENIED, with the exception of plaintiffs' motion to admit deposition testimony, ECF No. 149, which is GRANTED subject to preservation of specific objections to be heard at trial.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge